*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID A. GRILLI, Personal Representative of the
ESTATE OF ALDO H. GRILLI,

UNPUBLISHED
December 28, 2023

Plaintiff-Appellee,

v

No. 355398
Oakland Circuit Court
LC No. 2019-177655-NO

MON JIN LAU, INC.,

Defendant-Appellant.

ON REMAND

Before: GLEICHER, C.J., and JANSEN, AND BORRELLO, JJ.

PER CURIAM.

This case is before us on remand from our Supreme Court for reconsideration of our prior opinion in *Grilli Estate v Mon Jin Lau, Inc*, unpublished per curiam opinion of the Court of Appeals, issued January 27, 2022 (Docket No. 355398) (*Grilli I*), vacated ___ Mich ___ (2023) (Docket No. 164153), in light of the Supreme Court's recent decision in *Kandil-Elsayed v F & E Oil, Inc*, ___ Mich ___; ___ NW2d ___ (2023) (Docket Nos. 162907 and 163430).[1] In *Grilli I*, we reversed the trial court's order denying defendant, Mon Jin Lau, Inc.'s, motion for summary disposition, reasoning that the trial court erred by finding questions of fact that precluded application of the open and obvious doctrine. *Grilli I*, unpub op at 1, 4-5. Adhering to the new legal framework announced in *Kandil-Elsayed*, we affirm the trial court's denial of summary disposition because (1) Mon Jin Lau had a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition on its premises, and (2) questions of fact remain as to whether Mon Jin Lau breached its duty.

---

[1] See *Grilli v Mon Jin Lau, Inc*, ___ Mich ___ (2023) (Docket No. 164153) (*Grilli II*).

-1-

## I. BACKGROUND

This action arises from the death of Aldo Grilli (the decedent) from a brain hemorrhage he sustained when he tripped and fell on an uneven patch of asphalt in front of Mon Jin Lau's restaurant. *Grilli I*, unpub op at 1-2. We summarized the underlying facts in *Grilli I* as follows:

> The decedent and his son, plaintiff David Grilli [David], visited [Mon Jin Lau]'s restaurant. Slightly more than a year previously, [Mon Jin Lau] had applied an asphalt patch to an area in front of the only entrance to its restaurant, for the purpose of filling a gap between concrete slabs on the sidewalk. As the photographs supplied by the parties show, the asphalt patch was a darker color than the surrounding concrete, and it was slightly raised by approximately half an inch. [David] and the decedent were frequent patrons of [Mon Jin Lau]'s restaurant, having dined there approximately "once every couple months" for approximately three years. [David] conceded that "if [the patch] was there the whole time, then we walked over it every time we went." Although the decedent was 88 years old at the time of the incident, he was in good health, without any ambulatory issues, and did not use a cane or other assistive device. On the way out of the restaurant, [David] saw the decedent trip over the elevated patch of asphalt and fall. [David] brought the decedent to the hospital where he died the next day because of a brain hemorrhage caused by the fall. [David] brought this action against [Mon Jin Lau] as the personal representative of the decedent's estate. [*Id*. (seventh alteration in original).]

## II. ANALYSIS

"Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner v Lanctoe*, 492 Mich 450, 461; 821 NW2d 88 (2012). "This is an *objective standard*, calling for an examination of the objective nature of the condition of the premises at issue." *Id*. (quotation marks and citation omitted).

In *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 629 NW2d 384 (2001), our Supreme Court held that "the open and obvious doctrine should not be viewed as some type of exception to the duty generally owed invitees, but rather as an integral part of the definition of that duty." *Id*. at 516 (quotation marks omitted). "[T]he general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Id*. at 517. Following *Lugo*, and because "[q]uestions regarding whether a duty exists are [generally] for the court to decide as a matter of law," *Mouzon v Achievable Visions*, 308 Mich App 415, 418; 864 NW2d 606 (2014), courts often summarily dismissed premises liability cases under the open and obvious doctrine, see e.g., *Kennedy v Great Atlantic and Pacific Tea Co*, 274 Mich App 710, 712-713, 716-717, 722; (2007).

However, *Kandil-Elsayed* altered the legal framework governing premises liability claims by overruling *Lugo*. *Kandil-Elsayed*, ___ Mich at ___; slip op at 2. In reaching this decision, the Court held that *Lugo* was wrongly decided and "generated a whole host of practical-workability

-2-

problems," and that reliance interests were not strong enough to uphold the *Lugo* framework. *Id*. at ___; slip op at 39. But the Supreme Court did not completely abandon the open and obvious doctrine. Rather, it declared that the open and obvious nature of a condition is relevant to the element of breach and, assuming an otherwise actionable premises liability claim has been established, whether the plaintiff's damages should be reduced on the basis of comparative fault. *Id*. at ___; slip op at 39-40, 44.

The Supreme Court likewise overruled the special-aspects exception "to the extent that it departed from the anticipation-of-harm standard in § 343A of the Second Restatement [of Torts]." *Id*. at ___; slip op at 43. While courts previously engaged in a narrow analysis of whether the purportedly dangerous condition was effectively unavoidable or posed an unreasonable risk of severe harm, under the new framework outlined in *Kandil-Elsayed* the fact-finder must consider whether the defendant should have anticipated harm despite the obviousness of the dangerous condition. *Id*. at ___; slip op at 43. The Supreme Court emphasized that this question was relevant to the element of breach, not duty. *Id*. at ___; slip op at 43.

The Court provided the following summary of the now controlling standards:

> To summarize, a land possessor owes a "duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Williams* [*v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988)]. If the plaintiff establishes that the land possessor owed plaintiff a duty, the next step in the inquiry is whether there was a breach of that duty. Our decision does not alter the standard of reasonable care owed to an invitee, meaning that it's not necessary for land possessors to heed the advice in Justice VIVIANO's dissent to "immediately . . . rectif[y]" hazards on their property to avoid liability. Rather, as has always been true, a land possessor need only exercise reasonable care under the circumstances. As part of the breach inquiry, the fact-finder may consider, among other things, whether the condition was open and obvious and whether, despite its open and obvious nature, the land possessor should have anticipated harm to the invitee. If breach is shown, as well as causation and harm, then the jury should consider the plaintiff's comparative fault and reduce the plaintiff's damages accordingly. A determination of the plaintiff's comparative fault may also require consideration of the open and obvious nature of the hazard and the plaintiff's choice to confront it. [*Id*. at ___; slip op at 43-44 (second alteration in original).]

Here, Mon Jin Lau sought summary disposition on the basis that it owed no duty to the decedent with respect to an open and obvious condition like the asphalt patch. The trial court denied summary disposition because it found questions of fact concerning whether the asphalt patch was open and obvious, and whether it was effectively unavoidable. In *Grilli I*, we determined that the asphalt patch was, in fact, open and obvious. Although *Kandil-Elsayed* shifted the matters to which the open and obvious doctrine are relevant, it did not otherwise alter the substance of the doctrine. Thus, it remains true that a condition of the premises is deemed open and obvious if it is "reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection[.]" *Id*. at ___; slip op at 39-40 (quotation marks and citation omitted). This is, fundamentally, the first of several questions that a jury must resolve in

a premises liability case. Even if a jury were to determine that the asphalt patch was open and obvious, that conclusion no longer precludes the existence of a duty of due care. Accordingly, the legal basis for Mon Jin Lau's dispositive motion is now untenable.

Because the decedent was an invitee at the restaurant, Mon Jin Lau owed him a "duty to exercise reasonable care to protect [him] from an unreasonable risk of harm caused by a dangerous condition of the land." *Kandil-Elsayed*, ___ Mich at ___; slip op at 39, 43 (quotation marks and citation omitted). Whether a defendant breached its duty of care will ordinarily depend on questions of fact properly submitted to a jury, but may be decided by way of summary disposition when there are no genuine issues of material fact. *Id*. at ___; slip op at 44 n 28. The alleged obviousness of the asphalt patch is but one factor relevant to evaluating the breach element. Likewise, even though the slightly raised elevation of the asphalt patch and its proximity to Mon Jin Lau's only public entrance did not constitute special aspects under *Lugo*, those factors must now be afforded weight in evaluating whether Mon Jin Lau should have anticipated harm despite any obviousness of the asphalt patch. This question is relevant to, though not dispositive of, whether Mon Jin Lau breached its duty to exercise reasonable care.

On the existing record, reasonable minds could differ as to whether Mon Jin Lau satisfied its duty to exercise reasonable care to protect its patrons from unreasonable risks of harm. Mon Jin Lau, therefore, is not entitled to summary disposition. Moreover, the question of breach is a fact-intensive inquiry that involves considerations beyond the matters that were dispositive at the time of the trial court's ruling, so affirming the trial court and remanding for further proceedings would be an appropriate outcome in any event. See *id*. at ___; slip op at 45 (noting that facts relevant to breach may not have been explored in earlier proceedings because such factual development would have been futile under previous state of the law); *Dziewit v Meijer Inc*, unpublished per curiam opinion of the Court of Appeals, issued September 21, 2023 (Docket No. 362415) (vacating the grant of summary disposition and remanding for further proceedings in light of the substantial change in legal framework announced in *Kandil-Elsayed*).[2]

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Stephen L. Borrello

---

[2] We are not bound by unpublished opinions, but they may be considered as persuasive or instructive authority. *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020).